**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**MIKE SPALLA d/b/a JINGLE CATS MUSIC,**

Plaintiff,

v.

**NAVARRE CORPORATION,**

Defendant.

Civil No. 01-598 (PAM/JGL)

**O R D E R**

APPEARANCES

William J. Tipping, Esq. for Plaintiff.

Jeffery R. Ansel, Esq. for Defendant.

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on May 23, 2002 on Plaintiff's Motion to Amend Complaint (Doc. No. 14). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. INTRODUCTION

This case arises out of a contract dispute. Plaintiff is a song writer who recorded his cat "singing" Christmas carols. Plaintiff and Defendant

FILED MAY 3 0 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

entered into a distribution agreement ("the agreement") whereby Plaintiff would provide compact discs ("CDs") on consignment and Defendant would then sell the CDs for Plaintiff. Pursuant to the agreement, Defendant would provide Plaintiff with weekly reports which informed Plaintiff of the number of CDs in the inventory, the number of items returned to Defendant from its customers, the book value and inventory count for each of the various CDs, and any adjustments made to Plaintiff's inventory count. Apparently, Plaintiff consistently received these weekly reports.

On February 26, 1999, Defendant terminated the agreement. Under the agreement, upon termination Defendant could return unsold CDs to Plaintiff or purchase the unsold CDs from Plaintiff. If Plaintiff refused to accept the returns, Defendant could destroy the product or arrange for its transportation and storage at another location. According to Plaintiff, after Defendant terminated the contract, Plaintiff "continuously" requested that Defendant return any unsold CDs, and Defendant refused. However, Defendant contends that Plaintiff never issued the required return authorization number to permit return of the CDs. According to Defendant, Plaintiff did not even issue the number when Defendant specifically asked Plaintiff what to do with Plaintiff's inventory. Defendant does concede, however, that it received Plaintiff's letter requesting return of Plaintiff's inventory.

In October and December 2000, Plaintiff received weekly reports from Defendant which showed "adjustments" totaling 59,000 units.[1] After receiving these reports, Plaintiff requested an accounting and return of all its property in Defendant's possession.

On March 14, 2002 Plaintiff took the deposition of Amy Wentworth, Defendant's accounts payable employee. During the Wentworth deposition, Plaintiff learned for the first time that the "adjustments" may mean that Plaintiff's CDs were destroyed. On April 25, 2002 Plaintiff took the deposition of Dianne Leisen, Defendant's Director of Finance, who confirmed that Plaintiff's CDs had been destroyed with a sledgehammer. Ms. Leisen stated that the CDs were destroyed because Plaintiff owed Defendant approximately $110,000. Plaintiff avers that the value of the destroyed CDs was $362,779.32 and that he never authorized destruction of the CDs.

Based on the new evidence, Plaintiff seeks to amend his complaint to add claims for conversion, civil theft, and punitive damages. Defendant opposes the amendments because (1) Plaintiff had the information to plead these claims at the time of his original complaint, and (2) Plaintiff has been dilatory in conducting his discovery. The deadline for amending the complaint

---

[1]The Court is unclear as to why Defendant was still sending weekly reports twenty-two months after giving its ninety-day notice of terminating the contract.

was November 1, 2001. The discovery deadline was May 1, 2002, and the trial-ready date is August 1, 2002.

## II. DISCUSSION

Plaintiff seeks to add three claims to his complaint. Since a motion to amend to add a claim for punitive damages requires a different analysis than other motions to amend, the Court will address that motion separately.

### A. Plaintiff's Motions to Amend to Add Claims of Conversion and Civil Theft

A motion to amend a complaint after the pretrial deadline requires a two-step analysis. First, the moving party must show good cause to modify the pretrial schedule in accordance with D. Minn. LR 16.3 and Federal Rule of Civil Procedure 16(b). Only after good cause is shown to modify the schedule will the Court decide if justice requires granting the motion to amend. See Fed. R. Civ. P. 15(a). This two-step analysis is required because considering "only Rule 15(a) without regard to Rule 16(b), . . . would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." Scheidecker v. Arvig Enter., Inc., 193 F.R.D. 630, 632 (D. Minn. 2000) (quoting In re Milk Prod. Antitrust Litig., 195 F.3d 430, 437-38 (8th Cir. 1999), cert. denied sub nom. Rainy Lake One Stop, Inc. v. Marigold Foods, Inc., 120 S. Ct. 1534 (2000)); Archer Daniels Midland Co. v. Aon Risk Serv., Inc., 187 F.R.D. 578, 582 (D.

Minn. 1999); Luigino's Inc. v. Perzrow Co., Inc., 178 F.R.D. 523, 525 (D. Minn. 1998).

1. **Plaintiff's Motion to Modify the Pretrial Schedule**

Modifying a pretrial scheduling order requires a showing of good cause by the moving party. See Fed. R. Civ. P. 16(b). Good cause requires the party seeking the extension to show diligence in attempting to comply with the schedule. See Fed. R. Civ. P. 16(b) advisory committee's note (1983); Bradford v. Dana Corp., 249 F.3d 897, 809 (8th Cir. 2001); Archer Daniels Midland, 187 F.R.D. at 583. Rule 16(b) focuses on the showing of good cause and diligence by the movant, not whether the non-movant will be prejudiced. See Luigino's, 178 F.R.D. at 525.

Plaintiff argues that he has demonstrated good cause insofar as he filed his motion to amend within days of learning of the destruction of the CDs. Defendant responds that Plaintiff did not even begin serving discovery requests until three weeks after the deadline to amend the pleadings had passed. In addition, Plaintiff did not notice any depositions until almost two months after the deadline to amend the pleadings had passed.

The Court finds that Plaintiff has not demonstrated good cause for failing to comply with the original scheduling order in this case. In fact, the Court finds that even without the destruction of the CDs, Plaintiff had the facts

to plead civil theft at the time he filed his original complaint. Plaintiff's claim of civil liability for theft need not rest on the fact that the CDs are now destroyed. Under Minnesota law, "[a] person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages." Minn. Stat. § 332.51, subd.1. Plaintiff offers no explanation as to why he did not plead this cause of action before the deadline to amend the pleadings. Plaintiff was aware that Defendant had his property long before filing this lawsuit. In fact, Defendant's possession of the CDs is the very reason Plaintiff filed suit in the first place. These facts demonstrate that Plaintiff could have filed this claim within the time allowed in the scheduling order, if not in the original complaint. See Northern States Power v. Federal Transit Admin., No. Civ. 01-295, 2002 WL 459065, at *1 (D. Minn. March 19, 2002) (holding that plaintiff could not amend complaint when motion was filed six months after deadline for amending pleadings, after the close of discovery, and only weeks before defendants served their summary judgment motions).

The same can be said for Plaintiff's claim for conversion. To be liable for conversion under Minnesota law, one must exercise "dominion over the property of another that deprives the owner of possession for an indefinite period of time." Molenaar v. United Cattle Co., 553 N.W.2d 424, 430-31 (Minn. Ct. App. 1996) (citation omitted). Wrongfully refusing to deliver property after demand by the owner constitutes conversion. See id.

Plaintiff had the ability to plead conversion once Defendant refused to return the CDs as requested by Plaintiff's October 25, 2000 letter. (Pl. Ex. 5.) Plaintiff's failure to plead known causes of action during the time allowed in the scheduling order does not demonstrate the diligence required under the rules. In the District of Minnesota, when a plaintiff has the factual basis to file a motion to amend within the established time but fails to do so, the plaintiff does not demonstrate good cause for amending the scheduling order. See Northern States Power, 2002 WL 4359065 at **1-2 (Plaintiff had facts sufficient to plead cause of action in its original complaint); Luigino's, 178 F.R.D. at 526 (D. Minn. 1998) (same). If a scheduling order can be modified in circumstances in which the plaintiff knew the facts necessary to plead a cause of action at the time of filing but failed to do so, "the good cause showing of Rule 16(b) is an apparition." Id.

While it is true that Plaintiff's discovery requests were not late under the discovery schedule, that fact is not persuasive. See Thompson-El v. Jones, 876 F.2d 66, 68 (8th Cir. 1989) (finding that delay in serving discovery until after the date for amending complaints had passed an "unimpressive" reason to allow an amendment). The Court also finds it telling that Plaintiff does not even posit reasons for failing to serve discovery requests until after the deadline for amending the complaint. "[C]arelessness is not compatible with a

finding of diligence and offers no reason for a grant of relief." Sheidecker, 193 F.R.D. at 631 (citation omitted).

This Court views scheduling orders as important case management devices which should not be "cavalierly disregarded by counsel without peril." Luigino's, 178 F.R.D. at 525; Bradford, 249 F.3d at 809 ("We do not take case management orders lightly, and will enforce them.") (citation omitted). Accordingly, the Court finds that Plaintiff has not demonstrated good cause sufficient to modify the scheduling order in this case and Plaintiff's motion must be denied on that basis.

**2. Plaintiff's Motion to Amend the Complaint**

Once a moving party has demonstrated good cause to amend the pretrial schedule, the Court looks at the motion to amend the pleadings. In this case, Plaintiff did not show good cause to amend the pretrial schedule. However, even if Plaintiff had shown good cause, the following analysis will demonstrate that Plaintiff's Motion to Amend the Complaint must also be denied based on Federal Rule of Civil Procedure 15(a).

Federal Rule of Civil Procedure 15(a) governs a party's right to amend its pleadings, and leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court has construed Rule 15(a) in the following way:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an

> opportunity to test his claim on the merits. In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. - the leave sought should, as the rules require, be "freely given."

Forman v. Davis, 371 U.S. 178, 182 (1962).

The Eighth Circuit follows this liberal approach and reasons that a court should not deny a motion to amend unless the proffered claim is "clearly frivolous." Becker v. University of Nebraska, 191 F.3d 904, 908 (8th Cir. 1999) (citation omitted). Therefore, unless the claim is clearly frivolous, a court may not consider the likelihood of success on the merits when deciding whether to allow an amendment. See Popp Telcom v. American Sharecom, Inc., 210 F.3d 928, 944 (8th Cir. 2000) (quoting Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 695 (8th Cir. 1981)). However, the right to amend is not absolute and denial of leave to amend may be justified by "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987) (citation omitted).

In this case, Plaintiff has exercised undue delay in bringing her Motion to Amend the Complaint. Moreover, the Court finds that Defendant would suffer undue prejudice if the amendments were allowed. Discovery is completed in this case, and Defendant stated at the motion hearing that it is briefing its motion for summary judgment, which is due July 1, 2002.

Contrary to Plaintiff's assertion, additional discovery would need to be conducted if the proposed amendments were allowed. This is especially true when the proposed amendments would involve claims for additional damages. The original claim was for breach of contract, which allows for recovery of only the damages flowing from the breach. See Wild v. Rarig 234 N.W.2d 775, 789 (Minn. 1975). Under the proposed amendments, Plaintiff would instill in the case new damages theories. These theories would require additional discovery. See Thompson-El, 876 F.2d at 69.

Furthermore, in this case justice does not require that the Court grant Plaintiff's motion. Plaintiff admitted at the motion hearing that he can recover for all but his punitive damages under his current pleadings. In such a case, the Court finds that the benefit of allowing the amendments is outweighed by the prejudice which Defendant would suffer if the amendments were allowed. In conclusion, since Plaintiff has not demonstrated good cause to modify the pretrial schedule, and since Defendant would suffer prejudice if the proposed amendments were allowed, this part of Plaintiff's motion is denied.

**B. Plaintiff's Motion to Amend to Add a Claim for Punitive Damages**

Punitive damages are not intended to compensate a wronged plaintiff. See Ulrich v. City of Crosby, 848 F. Supp. 861, 867 (D. Minn.1994). Rather, punitive damages are intended to "both punish and deter" the

wrongdoer and others from "intentional wrongs and deliberate disregard of the safety or rights of others." Molenar v. United Cattle Co., 553 N.W.2d 424, 429 (Minn. Ct. App. 1996) (citing Rosenbloom v. Flygare, 501 N.W.2d 597, 601 (Minn. 1993)).

In the District of Minnesota, a party must follow the requirements of Minn. Stat. §§ 549.191 and 549.20 to plead punitive damages for claims brought pursuant to Minnesota state law. See Ulrich, 848 F. Supp. at 866 (citations omitted). A plaintiff seeking to assert a punitive damage claim may not include it in the initial complaint, but must move for leave to amend the complaint based on a prima facie showing of entitlement. See id. at 867; Minn. Stat. § 549.191. At this point in the litigation, "[t]he plaintiff is not required to demonstrate an entitlement to punitive damages per se, but only an entitlement to allege such damages." Ulrich, 848 F. Supp. at 867 (citation omitted).

Finally, a court must examine the evidence submitted in support of a motion to amend the complaint to plead punitive damages in the specific context of the asserted claims. See, e.g., Olson v. Snapp Products, Inc., 29 F. Supp.2d. 1027, 1036 (D. Minn. 1998). An examination of Plaintiff's evidentiary submissions without first determining whether the relevant law even permits punitive damages would be a futile exercise.

In the instant case, the Court finds that Plaintiff may not amend his complaint to add a claim for punitive damages because Plaintiff may not add his claim for civil theft. In the absence of any cause of action to support a claim for punitive damages, this part of Plaintiff's motion must also be denied.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Amend Complaint (Doc. No. 14) is **DENIED**.

Dated: May 29, 2002

JONATHAN LEBEDOFF
Chief United States Magistrate Judge

## *Featured Speakers Include:*

**District of Minnesota**

Judge David S. Doty

Judge Donovan W. Frank

Judge Paul A. Magnuson

Judge Ann D. Montgomery

Judge John R. Tunheim

Chief Magistrate Judge Jonathan Lebedoff

Magistrate Judge Arthur J. Boylan

**United States Bankruptcy Court**
**District of Minnesota**

Judge Robert J. Kressel

**Application Pending for 7.5 CLE Credits including 2 Ethics and 1 Bias Credit**

**The Minnesota Chapter of the Federal Bar Association**
c/o Kelly & Berens, P.A.
80 S. 8th Street, Suite 3720
Minneapolis, MN 55402

NON-PROFIT
ORGANIZATION
U.S. POSTAGE
PAID
Minneapolis, MN
Permit No. 2657

**MINNESOTA CHAPTER OF THE FEDERAL BAR ASSOCIATION**

In connection with
The Federal Judiciary

# *28th Annual Federal Court Practice Seminar*

June 19, 2002
8:00 am—5:15 pm

Minneapolis Convention Center
1301 Second Avenue South
Room 208
Minneapolis, MN 55402
(612) 335-6000

## Morning Session:

| | |
|---|---|
| 7:30-8:00 | **Registration** |
| 8:00-8:15 | **Opening Remarks and Welcome,** ***Judge Ann D. Montgomery*** |
| 8:15-9:00 | **Securities Law Issues in the Wake of Enron,** ***Timothy J. Warren (SEC Midwest Regional Office), Professor Niels Schaumann (William Mitchell College of Law), Karl L. Cambronne (Chestnut & Cambronne)*** |
| 9:00-9:45 | **Current Issues in Employment Law,** ***Judge Paul A. Magnuson, Linda L. Holstein (Parsinen Kaplan Rosberg & Gottlieb PA), John R. McDonald (Meagher & Geer, PLLP), Daniel Oberdorfer (Leonard, Street and Deinard)*** |
| 9:45-10:00 | **Morning Break** |
| 10:00-10:45 | **Current Initiatives in the U.S. Attorneys' Office,** ***Tom Heffelfinger (U.S. Attorneys Office)*** |
| 10:45-11:45 | **Discovery Disputes: Professionalism in the Practice of Law?,** ***Judge David S. Doty, Chief Magistrate Judge Jonathan Lebedoff, Magistrate Judge Arthur J. Boylan,*** |
| 11:45-12:45 | **Lunch (Room 211)** |

11:45-12:45 Lunch (Room 211)

## Afternoon Session:

| | |
|---|---|
| 12:45-1:30 | **The Clerk's Office Can Be Your New Best Friend,** ***Celeste Shahidi, Lou Jean Gleason, Mary Lenner, Gertie Simon, Andy Seldon*** |
| 1:30-2:15 | **How to Effectively Teach and Persuade in Patent or Intellectual Property Cases: Why, When and How,** ***Judge Donovan W. Frank, Becky R. Thorson (Robins, Kaplan, Miller & Ciresi), Stephen J. Davidson (Leonard, Street and Deinard)*** |
| 2:15-3:15 | **Issues in the Wake of 9/11: Racial Profiling --** ***Daniel M. Scott (U.S. Federal Public Defenders' Office)***; **Response by the Department of Justice --** ***Tony Brown (U.S. Attorneys Office)*** |
| 3:15:3:30 | **Afternoon Break** |
| 3:30-4:15 | **Update on Technology Tools for Litigating in Federal Court,** ***Judge John R. Tunheim, Judge Robert J. Kressel, Eric J. Magnuson (Rider, Bennett, Egan & Arundel)*** |
| 4:15-5:15 | **Ethics in "Real Life" Practice Situations,** ***Martin A. Cole (Lawyers Professional Responsibility Office)*** |

## *Seminar Registration*

☐ Member $195.00
☐ Non-Member $225.00

Name ______________________
Firm/Employer ______________________
Address ______________________
______________________
Phone ______________________
E-Mail ______________________

**Complete registration form and send with check payable to:**

**Minnesota Chapter, FBA**
**c/o Nancy Gustafson**
**Kelly & Berens, P.A.**
**Suite 3720 IDS Center**
**80 South Eighth Street**
**Minneapolis, Minnesota 55402**

**Not a Member? Join the FBA**

*To apply on-line or to download application form go to http://www.fedbar.org and click on "Join the FBA."*

Questions call: Barbara P. Berens, Vice President, Planning, Minnesota Chapter FBA
(612)-349-6171

**Annual Seminar Planning Committee:**

Kristine M. Boylan, Meagher & Geer, P.L.L.P.

Catherine A. McEnroe, Leonard, Street and Deinard

Celeste M. Shahidi, U.S. Courthouse Minneapolis Building

Susan Nolting, U.S. Department of Justice

Maureen Watz Gornik, Warren E. Burger Federal Building