UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Mike Spalla d/b/a
Jingle Cats Music,

Civ. File No. 01-598 (PAM/RLE)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

Navarre Corporation,

Defendant.

---

This matter is before the Court on a Motion in Limine filed by Defendant Navarre Corporation ("Navarre") and a Motion in Limine filed by Plaintiff Mike Spalla d/b/a Jingle Cats Music ("Spalla"). For the following reasons, the Court grants in part and denies in part Navarre's Motion and denies Spalla's Motion.

**BACKGROUND**

For the purposes of these Motions, it is not necessary to recite the facts of this case in great detail. In substance, this is a breach of contract matter. Spalla made recordings of his cats "singing" Christmas carols and other songs and formed a music label, Jingle Cats, to market these recordings. He entered into an informal and later a formal Distribution Agreement with Navarre. The formal Agreement provided for a consignment relationship whereby Spalla would ship product to Navarre, but Navarre would not take title to the product. Rather, Navarre would sell what product it could and pass the money (less profits

OCT 3 1 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

for Navarre) back to Spalla. Under the terms of the Agreement, Navarre could accept returns of the product from its retailers and sub-distributors and receive credit from Spalla for these returns. Navarre could also return product to Spalla at any time.

In late February 1999, Navarre wrote to Spalla and terminated the Agreement, effective June 1, 1999. On May 5, 1999, Navarre provided Spalla with an "Open Aging Report," which is a document that purports to set forth all of the details of the accounts between the parties. The Distribution Agreement provides that Spalla had 90 days in which to object to any account statement. Spalla, however, failed to object to the information in the May 1999 Open Aging Report. The report indicated that Spalla owed Navarre $69,138.71 for returns of Spalla's product. Spalla did not forward any payment to Navarre, so Navarre continued to market and sell Spalla's product after the June 1999 termination, ostensibly to mitigate its losses.

In August 2000, Navarre sent Spalla another Open Aging Report reflecting returns and credits through that date. Navarre asked Spalla to forward any objections to that report within 90 days. On October 26, 2000, Spalla's attorney wrote to Navarre disputing the August 2000 Open Aging Report and demanding the return of Spalla's product. Two weeks later, without notifying Spalla, Navarre began destroying the product it held in inventory. According to Spalla, Navarre destroyed more than $360,000 worth of product.

Spalla brought this suit in April 2001 and Navarre filed counterclaims. On summary judgment, the Court determined that Spalla had breached the Distribution Agreement by

failing to pay the amount shown on the May 1999 Open Aging Report. However, the Court also determined that Spalla could challenge the accuracy of the amount shown in that report. Furthermore, the Court found that Spalla properly disputed the amount shown in the August 2000 Open Aging Report. Finally, the Court found that Spalla could proceed on his claim that Navarre breached the Distribution Agreement by failing to return unsold product and instead destroying it.

Navarre now seeks to: (1) prevent Spalla from introducing evidence related to issues that Navarre claims the Court decided in Navarre's favor on summary judgment; (2) exclude the expert testimony of Lisa K. Naatz, relating to damages, for failure to comply with Rule 702 of the Federal Rules of Evidence; and (3) limit the evidence that Spalla can present relating to damages to evidence establishing the replacement cost of the product that Navarre failed to return or destroyed. Spalla, in his Motion, asks the Court to prevent Navarre from introducing any evidence related to the cost of manufacturing or replacing the product at issue.

## DISCUSSION

### A. Navarre's Motion Regarding Summary Judgment Issues

#### 1. <u>Breach of Contract</u>

Navarre contends that the Court's ruling during the summary judgment phase of this litigation conclusively established that Spalla breached the Distribution Agreement by failing to pay the amount shown on the May 1999 Open Aging Report. Pursuant to the Court's

Order, Navarre urges the Court to prevent Spalla from adducing any evidence suggesting that he did not breach the Distribution Agreement.

As Spalla notes, however, the Court also determined that Spalla could challenge the accuracy of the entries in the Open Aging Report. Thus, the Court will grant Navarre's Motion only to the extent that it seeks to prevent Spalla from directly arguing or suggesting that he did not breach the Distribution Agreement. Nevertheless, Spalla may present evidence showing that he was not obligated to pay the full amount shown on the May 1999 Open Aging Report.

### 2. Failure to Communicate

On summary judgment, Spalla alleged that Navarre failed to communicate with him regarding the status of his accounts and his inventory. This failure, Spalla maintained, constituted a breach of the Distribution Agreement. As Navarre correctly points out the Court specifically rejected this argument. Accordingly, Navarre now seeks to prevent Spalla from arguing that its alleged failure to communicate with Spalla constituted a breach of the Distribution Agreement.

Spalla argues that Navarre's failure to communicate is highly relevant to the issues in this case, including Navarre's destruction of Spalla's product. Spalla does not dispute the Court's ruling that this alleged failure to communicate cannot form the basis of a breach of contract claim. The Court will, therefore, allow Spalla to introduce evidence tending to show that Navarre failed to communicate with him. Spalla may not, however, argue or suggest that

Navarre was under any duty to communicate with Spalla or that any failure by Navarre to communicate with Spalla constitutes a breach of the Distribution Agreement.

### 3. Accounting

Navarre next asks the Court to prevent Spalla from arguing that he could not conduct a full accounting of the parties' business relationship. Because Spalla asserts that he will not introduce any such evidence, the Court will deny as moot this potion of Navarre's Motion.

### 4. Account Records

Navarre contends that Spalla should be prohibited from submitting evidence that he had no opportunity to review the account documents in Navarre's control. Navarre argues that, pursuant to the Distribution Agreement, Spalla had a right to inspect the books and records showing the transactions made under the Agreement. Thus, the fact that Spalla did not avail himself of this right cannot be relevant to the case. Any harm that Spalla suffered as a result of not looking at the account documents in Navarre's control resulted from his choice and not any action by Navarre.

Spalla concedes that he had the opportunity to review account documents while the parties were operating under the Distribution Agreement. He maintains, however, that he should be able to submit evidence showing that, after the Agreement was terminated, Navarre was unable or unwilling to produce the account documents. Spalla also argues that he should be able to produce evidence showing that Navarre's inaccurate and flawed record-keeping processes would have made any review of the account documents futile.

Spalla may adduce evidence suggesting that Navarre was unwilling or unable to produce the account documents after the Distribution Agreement was terminated. Additionally, Spalla may produce evidence showing that any review of the documents would have been futile. Spalla may not, however, argue directly or indirectly that Navarre improperly prohibited him from reviewing the account documents while the parties were operating under the terms of the Distribution Agreement.

**5. Physical Inspection**

Finally, Navarre urges the Court to prevent Spalla from presenting any evidence that he was unable to verify the product held by Navarre in inventory. Navarre points out that the Distribution Agreement provided Spalla with the right to make his own physical inspection of the inventory with reasonable advance notice. Navarre contends that Spalla should not be able to claim that he was prejudiced by his own failure to take advantage of this opportunity.

Spalla admits that the had the opportunity to inspect the inventory under the terms of the Distribution Agreement; however, he argues that he should be able to submit evidence showing that any such inspection would have been futile. The Court agrees. Spalla may present any evidence tending to show that an inspection of the inventory held by Navarre would have been futile. Spalla may not, however, argue or suggest that he was prevented by Navarre from conducting such an inspection.

**B. Navarre's Motion Regarding Expert Testimony**

Spalla intends to offer the expert testimony of Lisa K. Naatz to prove the economic damages that he claims to have suffered. Navarre argues that the Court should exclude Ms. Naatz testimony under Rule 702 of the Federal Rules of Evidence. Specifically, Navarre argues that Ms. Naatz's opinion is based on an incomplete representation of the parties' relationship and fails to account for the most important period in the parties' relationship. Navarre also argues that Ms. Naatz concedes that it is impossible for her to fully account for the transactions between the parties because she based her opinion on incomplete information.

Rule 702 provides in pertinent part that an expert may testify if: (1) the testimony of the expert is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has applied the principals and methods reliably to the facts of the case. Fed. R. Evid. 702. In this case, Navarre essentially argues that Ms. Naatz did not have sufficient facts or data upon which to base her expert opinion.

Acting as a "gatekeeper," this Court must screen proffered expert evidence to ensure that what is admitted "is not only relevant but reliable." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993); Blue Dane Simmental Corp. v. Am. Simmental Ass'n, 178 F.3d 1035, 1040 (8th Cir. 1999). In order for a proffered expert's testimony to be reliable, there must be "a reasonable factual basis for [the expert's] testimony." Teska v. Potlatch Corp., 184 F. Supp. 2d 913, 919 (D. Minn. 2002). The key determination in this case, then,

is whether Ms. Naatz's concession that she had incomplete information when she rendered her opinion so undermines the opinion's reliability that it must be excluded. Unfortunately, neither party has provided the Court with a copy of Ms. Naatz's expert report. Thus, it is impossible for the Court to conclusively resolve this issue.

Preliminarily, the Court denies Navarre's Motion and determines that the appropriate means for attacking the validity of Ms. Naatz's expert report is through vigorous cross-examination, presentation of contrary evidence, and an appropriate instruction on the burden of proof. See Daubert, 509 U.S. at 595. Navarre, however, may reassert at trial its challenge to the admissibility of those portions of Ms. Naatz's expert report that Navarre claims she has conceded are based on incomplete information.

### C. Navarre's and Spalla's Motions Regarding Damages

Spalla seeks damages for Navarre's alleged improper failure to return and destruction of Spalla's products after the termination of the Distribution Agreement. Navarre contends that Spalla should be limited to presenting evidence establishing the replacement cost of the product. Spalla, on the other hand, argues that he is entitled to the market value of the product and asks the Court to prevent Navarre from presenting any evidence regarding the replacement or production costs of the product.

Both parties construe Spalla's claim for damages as a contract claim. In Minnesota, as elsewhere, the proper measure of damages in a breach of contract case is generally the amount that will place the nonbreaching party in the same situation as if the contract had been fully performed. Peters v. Mut. Benefit Life Ins. Co., 420 N.W.2d 908, 915 (Minn. Ct. App. 1988). At this point, however, the parties' analyses split.

Navarre persuasively argues that Spalla's breach of contract claim is predicated on Navarre's alleged failure to return the product. Thus, had the contract been performed, Navarre argues, Spalla would have merely received the product, not the retail value of the product. The sell through of the product to consumers was a condition precedent to Navarre's duty to pay Spalla the retail value of the product under the Distribution Agreement.

Relying on an Eighth Circuit case, Spalla contends that he is entitled to either the retail value of the product or the price that Navarre's vendors paid Navarre for the product. See Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706 (8th Cir. 2001). Spalla's reading of Wheeling, however, is fallacious. The court's focus in that case was on properly defining the replacement cost of the product at issue. In Wheeling, the plaintiff brought an action against the defendant for breach of a bailment contract arising from flood damage to the plaintiff's steel. Applying Missouri law, the Eighth Circuit determined that, because the steel was being held as stock rather than for the purposes of consumption, the proper measure of damages was the wholesale market value of the steel

as well as any lost profits due to specific lost sales that the plaintiff could prove with sufficient certainty. Id. at 720. These lost profits would be determined by the retail value of the steel. Id. at 720. In the instant case, there is no wholesale market for Spalla's product.

This case, then, is more akin to Chevron Chemical Co. v. Street Industries, Inc., 534 F. Supp. 801 (E.D. Mo. 1982). In Chevron, the plaintiff brought an action against the defendant for negligently failing to safeguard the plaintiff's product. Because the product was being held as stock, the Court found that the proper measure of the plaintiff's damages was the wholesale value of the product plus delivery or transportation charges. Id. at 804. The plaintiff, however, was the sole manufacturer of the product at issue, so there was no wholesale market in which the plaintiff could purchase replacement product. Id. Accordingly, the Court relied on the cost of manufacturing the product to determine the extent of damages that the plaintiff had suffered.

As in Chevron, the appropriate measure of damages in this case is the cost of manufacturing replacement product plus any incidental costs associated with the manufacturing or shipping of the product. Spalla may, however, supplement this measure of damages if he provides sufficiently certain evidence that he lost profits as a result of losing specific sales. Any lost profits will be measured by the retail value of the product.

**CONCLUSION**

For the foregoing reasons, and upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion in Limine Regarding Prior Decisions of the Court, Expert Testimony, and Damages (Clerk Doc. No. 48) is **GRANTED in part and DENIED in part** as set forth above;

2. Plaintiff's Motion in Limine to Exclude Cost of Production Evidence (Clerk Doc. No. 46) is **DENIED**.

Dated: October 31, 2002

Paul A. Magnuson
United States District Court Judge